UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CAMILLO DOUGLAS and LUIS SORIANO

Plaintiffs,

vs.

CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS; GREGORY MCLAUGHLIN, as Prison Warden of the Robert N. Davoren Center, MARTIN F. HORN, as Commissioner of the New York City Department of Corrections; CORRECTION OFFICER JOSEPH MASCIA (#17786), CORRECTION OFFICER ALBERT MAYSONET (#18342), CORRECTION OFFICER CHRIS DITOMMASO (#18026), CAPTAINS JOHN DOE and RICHARD ROE (names and number of whom are unknown at present),

Defendants
-----------------------------------------------------------X

**AMENDED COMPLAINT**

07 CV 8443 (GEL)

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

1. This is an action to recover money damages arising out of Defendants' violation of Plaintiffs' rights as secured by the Civil Rights Act, 42 U.S.C. Section 1983, and of rights secured by the Eighth Amendment to the United States Constitution. Plaintiffs, while incarcerated at the Rikers Island jail facility, were deprived of their constitutional and common law rights when Correction Officers at the Robert N. Davoren Center (hereinafter "RNDC") failed to provide protection to Plaintiffs by knowingly subjecting Plaintiffs to a substantial risk of serious harm of physical attacks from other inmates.

2. Defendant City of New York (hereinafter "Defendant City") is liable for the

individual Defendants' acts under the theory of *respondeat superior*. At the time of the incident, the individual correction officer Defendants were acting under color of state law in the course and scope of their employment at the New York City Department of Correction (hereinafter "NYCDOC"), an agency of Defendant City.

3. In addition, Defendants City and NYCDOC are liable for their negligent and reckless hiring, training, screening, retention and supervising of the individual correction officer Defendants. As a result of their negligent and reckless hiring, training, screening, retention, and supervision, Mr. Douglas and Mr. Soriano suffered physical and emotional injuries, public shame, and humiliation, expenditure of substantial legal fees, and continuing emotional and mental anguish and pain.

4. Defendants City and NYCDOC are also liable pursuant to Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978). Plaintiffs' constitutional rights and resultant injuries were substantially caused by Defendant NYCDOC and City's institution or implementation of grossly negligent, reckless and or deliberately inadequate policies or customs concerning the protection of inmates detained at Rikers Island facilities. The policies, practices and/or customs of these agencies also included complicity in gang violence and a deliberate indifference to properly train, discipline, and/or supervise their employees who engaged in the above constitutional violations.

5. As a result of the aforementioned constitutional violations, Plaintiffs suffered physical as well as emotional, mental and psychological pain and suffering.

## JURISDICTION

6. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Eighth and

Fourth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4) and the aforementioned statutory and constitutional provisions.

7. Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that give rise to the federally based claims and causes of action.

**VENUE**

8. Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391, (a), (b) and (c) and § 1402 (b) because the claims arose in this district.

**PARTIES**

9. Plaintiff, Mr. Camillo Douglas, is a citizen of the United States, and is currently incarcerated at Sing Sing Correctional Facility, 354 Hunter Street, Ossining, New York 10562-5442. At the time of the incident, he was incarcerated at RNDC at Rikers Island jail facility, C-74, 11-11 Hazen Street, East Elmhurst, New York 11370, serving a sentence of incarceration under indictment number 0484-99 (Bronx County).

10. Plaintiff, Luis Soriano, is a citizen of the United States, and is a resident of the County of Bronx, City and State of New York. At the time of the incident, he was incarcerated at

RNDC at Rikers Island jail facility, C-74, 11-11 Hazen Street, East Elmhurst, New York 11370, serving a sentence of incarceration under indictment number 0065-2001 (Bronx County).

11.    Defendant City of New York (hereinafter "Defendant City") is a municipal corporation existing by virtue of the laws of the State of New York. It is authorized by law to maintain Defendant NYCDOC, which acts as its agent in the area of incarcerating pre-trial detainees and holding inmates awaiting transfer to New York State correctional facilities.

12.    Defendant City is ultimately responsible for its Departments, and assumes the risks incidental to the maintenance of the NYCDOC and the employment of its Correction Officers.

13.    Defendant Mr. Martin F. Horn, at all times herein mentioned, the Commissioner of the NYCDOC, acted toward Plaintiffs under color of the statutes, ordinances, customs, and usage of the State and City of New York, and within the scope of his employment. He is a high-level policy-making official at the NYCDOC. He is named here in his official capacity.

14.    Defendant Mr. Gregory McLaughlin, at all times herein mentioned, Prison Warden of RNDC, acted toward Plaintiffs under color of the statutes, ordinances, customs, and usage of the State and City of New York, and within the scope of his employment. He is a high-level policy-making official at the NYCDOC and/or RNDC. He is named here in his official capacity.

15.    Correction Officer Joseph Mascia (#17786) is and was at all times relevant herein an employee and agent of the NYCDOC. On the date of the incident, April 16, 2007, he was assigned to the 4 Upper "C" Post at RNDC of the Rikers Island jail facility. He is being sued herein in his individual capacity.

16. Correction Officer Albert Maysonet (#18342) is and was at all times relevant herein an employee and agent of the NYCDOC. On the date of the incident, April 16, 2007, he was assigned to the 4 Upper "A" Post at RNDC of the Rikers Island jail facility. He is being sued herein in his individual capacity.

17. Correction Officer Chris Ditommaso (#18026), is and was at all times relevant herein an officer, employee and agent of the NYCDOC. On the date of the incident, April 16, 2007, he was assigned to the 4 Upper "B" Post at RNDC of the Rikers Island jail facility. He is being sued herein in his individual capacity.

18. Captains John Doe and Richard Roe are and were at all times relevant herein officers, employees and agents of the NYCDOC. On the date of the incident, April 16, 2007, they were assigned to 4 Upper South at RNDC. Captains John Doe and Richard Roe are being sued herein in their individual capacities.

19. At all times relevant herein, the individual correction officer Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYCDOC, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYCDOC, with the power and authority vested in them as officers, agents and employees of the NYCDOC and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYCDOC.

20. At all times relevant herein, Defendants City, and/or NYCDOC ("Municipal Defendants"), acting through individual defendants acting under color of state law and in concert with other individual defendants, had de facto policies, practices, customs and usages which were

a direct and proximate cause of the unconstitutional conduct alleged herein and the damages attendant thereto.

21. At all times relevant herein, the Municipal Defendants, acting through individual defendants acting under color of state law and in concert with other individual defendants, had de facto policies, practices, customs and usages of failing properly to train, screen, supervise or discipline employees and correction officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants which were a direct and proximate cause of the unconstitutional conduct alleged herein and the damages attendant thereto.

22. At all times relevant herein, the Defendants acted maliciously, intentionally, knowingly and/or with a deliberate indifference to or with a reckless disregard for the natural and probable consequences of their acts and/or omissions with respect to the unconstitutional conduct alleged herein.

23. Since the individual correction officer Defendants were employees of the NYCDOC, a New York City agency, Defendants City, Mr. Martin F. Horn as Commissioner of the NYCDOC, and Mr. Gregory McLaughlin as Prison Warden of RNDC are proper defendants.

24. More than 30 days have elapsed since such service without adjustment or payment of the claims.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Procedural History of Mr. Douglas' Underlying Criminal Case

25. Plaintiff Camillo Douglas was arrested in the shooting death of a Bloods gang member,

Lamar Williams, which occurred on January 14, 1999 in front of Truman High School in Bronx County, New York.

26. In a judgment rendered on March 9, 2000 convicting Mr. Douglas of attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second and third degrees, the Supreme Court, Bronx County (Phylis Skloot Bamberger, J.) sentenced him to concurrent terms of twenty-three years, twenty-three years, fifteen years and seven years, respectively.

27. On February 7, 2006, the Appellate Division, First Department reversed Mr. Douglas' conviction on the attempted murder and assault counts, affirmed his conviction and sentence on the criminal possession of a weapon counts, and remanded the matter for a new trial on the attempted murder and assault charges. At the time of this incident, Mr. Douglas was being held at RNDC on Riker's Island awaiting trial on the attempted murder and assault charges, while serving his sentence of fifteen and seven years on the weapons charges.

**Procedural History of Mr. Soriano's Underlying Criminal Case**

28. Plaintiff Luis Soriano was charged with second degree murder and first degree manslaughter in connection with the stabbing death of Daniel Mejil on December 15, 2000.

29. In a judgment rendered on June 3, 2002 convicting Mr. Soriano of manslaughter in the first degree, the Supreme Court, Bronx County (Margaret Clancy, J.) sentenced him to a term of seventeen years.

30. On January 25, 2007, the Appellate Division, First Department reversed Mr. Soriano's Douglas' conviction and remanded the matter for a new trial. At the time of this incident, he was being held at RNDC on Riker's Island awaiting trial.

31.     On August 2, 2007, Mr. Soriano pled guilty to manslaughter in the second degree. He was sentenced on August 15, 2007 to an indeterminate term of three to six years.

**Plaintiffs' Detainment at Rikers Island and Attack by Blood Gang Member Porters**

32.     On April 16, 2007, Plaintiffs were being held at Riker's Island jail facility awaiting their respective trials on the above referenced criminal matters.

33.     At approximately 10:20 p.m. at RNDC, Plaintiffs, as well as all other inmates, were locked into their cells for the evening.

34.     However, approximately three porters, who are known Blood gang members, were outside their cells.

35.     At around 10:40 p.m., one of the individual correction officer Defendants electronically unlocked Plaintiff Camillo Douglas' cell (# 6).

36.     No other cells were unlocked.

37.     Three inmate porters rushed into cell # 6 and attacked Mr. Douglas with brooms and metal shanks, striking and stabbing him multiple times about his arms, head and face.

38.     Then, one of the individual correction officer Defendants electronically unlocked all the cells.

39.     Immediately, about ten to twelve Blood gang member inmates, armed with brooms and metal shanks, raced into the vicinity of Plaintiff Douglas' cell.

40.     Plaintiff Camillo Douglas escaped from his cell and was chased by all the Blood gang member inmates into the 4 Upper South Dayroom. There, the Blood gang members began striking and beating Mr. Douglas repeatedly with broken broomsticks about his head and back. Mr. Douglas

sustained serious injuries including stab wounds to his face, lips, head, and both arms, bruises to his lower back, headaches, blurry vision, and vertigo.

41. Witnessing the violent attack, Plaintiff Luis Soriano rushed to the aid of Mr. Douglas.

42. Mr. Soriano was also attacked by several Blood gang member inmates. Armed with broomsticks, they began striking and beating Mr. Soriano until he was knocked to the ground. He sustained injuries to his right hand, upper and lower back, left hip, right thigh, left forearm and left buttock.

43. At no time did any of the individual correction officer Defendants or any other correction officer who was on duty in the dorm attempt to protect Mr. Soriano or Mr. Douglas.

44. Later, a Probe Team, a special unit trained to subdue inmate violence, arrived, applied flex cuffs to the inmates and escorted Plaintiffs and others out of the area for medical attention thereby ending the incident.

45. As correction officers, the individual Defendants had a duty to protect Plaintiffs from violence by other inmates. Their complicity in the gang violence and their deliberate indifference to the serious risks to Plaintiffs' safety resulting from their conduct, caused each Plaintiff to sustain physical and psychological injuries, emotional trauma and pain and suffering.

## FIRST CAUSE OF ACTION

### Violation of Plaintiff Douglas' Eighth Amendment Rights

46. Plaintiff Douglas repeats, reiterates, and realleges each and every allegation contained in paragraphs marked 1 through 45 with the same force and effect as if more fully set forth at length

herein.

47. The individual correction officer Defendants failed to provide protection to Plaintiff Douglas by knowingly subjecting Plaintiff to a substantial risk of harm of physical attacks from other inmates. The deliberate indifference and complicity in gang violence committed by the individual correction officer Defendants placed Plaintiff Douglas in substantial risk of such harm. Such deliberate indifference resulted in the infliction of unnecessary and wanton pain and suffering upon Plaintiff Douglas by other inmates and violated his rights under the Eighth Amendment to the United States Constitution.

**SECOND CAUSE OF ACTION**

**Violation of Plaintiff Soriano's Fourth and Eighth Amendment Rights**

48. Plaintiff Soriano repeats, reiterates, and realleges each and every allegation contained in paragraphs marked 1 through 47 with the same force and effect as if more fully set forth at length herein.

49. The individual correction officer Defendants failed to provide protection to Plaintiff Soriano by knowingly subjecting Plaintiff to a substantial risk of harm of physical attacks from other inmates. The deliberate indifference and complicity in gang violence committed by the individual correction officer Defendants placed Plaintiff Soriano in substantial risk of such harm. Such deliberate indifference resulted in the infliction of unnecessary and wanton pain and suffering upon Plaintiff Soriano by other inmates and violated his rights under the Fourth and Eighth Amendments to the United States Constitution.

## THIRD CAUSE OF ACTION

## Monell/42 U.S.C. § 1983 Claim Against Defendants City and NYCDOC

50. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 49 above as if fully set forth herein.

51. The violation of Plaintiffs' constitutional rights and resultant injuries were further directly, proximately and substantially caused by conduct, chargeable to Defendant City and/or NYCDOC, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiffs, that are detained at the facilities at Rikers Island of the NYCDOC, namely, the institution and implementation of grossly negligent, reckless and/or deliberately inadequate or unlawful policies, procedures, regulations, practices and/or customs concerning the protection of inmates, complicity in inmate gang violence and or the deliberate indifference by policymaking officials at the NYCDOC and/or Rikers Island jail facilities with respect to their obligation to properly instruct, train, supervise and discipline their employees, including the individual correction officer Defendants in this case, with respect to such matters.

52. The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for Defendant City, including, but not limited to, the Commissioner of the NYDOC, Mr. Martin F. Horn, and the Prison Warden of RNDC, Mr. Gregory McLaughlin, who knew:

a. to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the detainment of inmates at facilities at Rikers Island, including RNDC;

      b.      that such issues either present employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of employees mishandling such situations; and

      c.      that the wrong choice by municipal employees concerning such issues will frequently cause the deprivation of the constitutional rights of inmates at Rikers Island and cause the inmate constitutional injury.

53.    Despite their knowledge of said policies, procedures, regulations, practices and/or customs, the supervisory and policymaking officers and officials of Defendant City and/or NYCDOC, as a matter of policy, perpetuated, or failed to take preventative or remedial measures to terminate said policies, procedures, regulations, practices and/or customs, did not discipline or otherwise properly supervise the individual personnel who engaged in them, did not effectively instruct, train and/or supervise such personnel (including the individual correction officer Defendants herein) with regard to the proper constitutional and statutory requirements in the exercise of their authority, but instead sanctioned the policies, procedures, regulations, practices and/or customs, described above, with a deliberate indifference to the effect of said policies, procedures, regulations, practices and/or customs upon the constitutional rights of inmates and citizens of the State of New York.

54.    The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City and/or NYCDOC were collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiffs' rights under the Constitution and laws of the United States and in causing their damages.

55.    Under the principles of municipal liability for federal civil rights violations, the

City's NYCDOC Commissioner (or his authorized delegates), has final responsibility for training, instructing, supervising and disciplining employees of the NYCDOC with respect to their protection of inmates.

56. During all times material to this Complaint, the NYCDOC Commissioner owed a duty to the public at large and to Plaintiffs, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs and practices sufficient to deter and to avoid conduct by his subordinates violating the aforementioned constitutional rights of inmates held at Rikers Island facilities.

57. The NYCDOC Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement policies and procedures, including policies and procedures as to personal hiring, training, discipline and supervision, with respect to his Department's performance of its duties.

58. The NYCDOC Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority, and constitutes a City policymaker for whom the City is liable, with respect to the above-mentioned areas.

59. Under the principles of municipal liability for federal civil rights violations, the RNDC Prison Warden (or his authorized delegates) has final responsibility for training, instructing, supervising and disciplining correction officers and other employees at RNDC regarding their conduct in the protection of inmates.

60. During all times material to this Complaint, the RNDC Prison Warden owed a duty to the public at large and to Plaintiffs, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs and practices

sufficient to deter and to avoid conduct by his subordinates violating the aforementioned constitutional rights of inmates held at RNDC.

61. The Prison Warden at RNDC, personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement policies and procedures, including policies and procedures as to personal hiring, training and supervision, with respect to his jail facility's performance of its duties.

62. The Prison Warden at RNDC, personally and/or through his authorized delegates, at all relevant times had final authority, and constitutes a City policymaker for whom the City is liable, with respect to the above-mentioned areas.

**FOURTH CAUSE OF ACTION**

**Negligent Hiring, Retention, Training and Supervision**

63. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs marked 1 through 62 with the same force and effect as if more fully set forth at length herein.

64. Defendant City and/or NYCDOC and its employees, servants and or agents acting within the scope of their employment did negligently hire, train, retain and supervise the individual correction officer Defendants, individuals who were unfit for the performance of correction duties on April 16, 2007, at the aforementioned location.

65. The acts of the individual correction officer Defendants, employees of Defendants City and NYCDOC, were the result of Defendants NYCDOC and/or City's negligence, in its hiring, training, retention, and supervision of its agents, servants and/or employees.

66. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## JURY DEMAND

67. Plaintiffs hereby demand trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a. For compensatory damages in an amount to be determined;

b. For punitive damages in an amount to be determined;

c. For reasonable attorneys' fees, together with costs and disbursements, pursuant to § 1988 and this Court's discretion;

d. For pre-judgment interest as allowed by law; and

e. For such other and further relief as this Court may deem just and proper.

DATED: April 21, 2008
New York, New York

Yours, etc.

ROMANO & KUAN, PLLC

(BY ANTHONY CECUTTI, ESQ.)

By: JULIA P. KUAN (JK3822)
100 Lafayette Street, Suite 401
New York, New York 10013
(212) 274-0777

TO: CITY OF NEW YORK
c/o Corporation Counsel
100 Church Street
New York, New York 10007

MARTIN F. HORN
Commissioner, New York City Department of Correction
60 Hudson Street
New York, New York 10013

GREGORY MCLAUGHLIN
Prison Warden
Rikers Island Jail Facility
Robert N. Davoren Center
11-11 Hazen Street
East Elmhurst, New York 11370

CORRECTION OFFICER JOSEPH MASCIA (#17768)
Rikers Island Jail Facility
Robert N. Davoren Center
11-11 Hazen Street
East Elmhurst, New York 11370

CORRECTION OFFICER ALBERT MAYSONET (#18342)
Rikers Island Jail Facility
Robert N. Davoren Center
11-11 Hazen Street
East Elmhurst, New York 11370

CORRECTION OFFICER CHRIS DITOMMASO (#18026)
Rikers Island Jail Facility
Robert N. Davoren Center
11-11 Hazen Street
East Elmhurst, New York 11370

**ATTORNEY VERIFICATION**

State of New York    )
                     )    ss.:
County of New York   )

JULIA P. KUAN, ESQ., an attorney duly admitted to practice before the courts of this district, affirms the following under penalty of perjury:

I am an attorney who represents the Plaintiffs in this action. I have read the foregoing and know the contents thereof; the same is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true. The reason this verification is made by me and not by the Plaintiffs is that they reside outside of New York County, the location of my offices.

JULIA P. KUAN    (BY ANTHONY CECUTTI, ESQ.)